# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **SHANNON MACKERETH; JONATHAN YOUNG; and ALYSSA WETZEL,** *on behalf of themselves and all others similarly situated*, | **CIVIL ACTION NO. 14-04824** |
| **Plaintiffs,** | |
| **v.** | |
| **KOOMA, INC. d/b/a KOOMA; KOOMA VIET INC.; KOOMA RIVERFRONT; KOOMA II, LLC; SCOTT KIM; JANG MOON; YUNG H. KWUN; JIN Y KIM; and DOE DEFENDANTS 1-10,** | |
| **Defendants.** | |

**PAPPERT, J.**                                                                       **MAY 14, 2015**

### MEMORANDUM

Plaintiffs Shannon Mackereth ("Mackereth"), Jonathan Young ("Young") and Alyssa Wetzel ("Wetzel"), on behalf of themselves and those similarly situated (collectively "Plaintiffs"), filed this lawsuit against Defendants Kooma, Inc., Kooma Viet Inc. ("Kooma Viet"), Kooma Riverfront, Kooma II, LLC ("Kooma II"), Scott Kim ("S. Kim"), Jang Moon ("Moon"), Yung H. Kwun ("Kwun"), Jin Y Kim ("J. Kim") and Doe Defendants 1-10 for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat. § 333.101 *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1 *et seq.*, and for unjust enrichment.  Before the Court is Defendants' Motion to Dismiss.  (Doc. No. 32.) For the following reasons, Defendants' motion is granted in part and denied in part.

## I.    _Factual and Procedural Background_

Plaintiffs bring this putative collective action[1] and putative class action[2] against their alleged employers, a group of restaurants they contend operate under the trade name "Kooma," and "share common ownership and employment policies."  (Am. Compl. ¶¶ 1, 3.)  Each restaurant employs waiters, waitresses and bartenders (collectively "Tipped Employees") who are "subjected to Defendants' unlawful pay practice."  (_Id._ ¶ 2.)  Plaintiffs refer to Defendants collectively as "Kooma" and/or "Kooma Entities."  (_Id._ ¶¶ 1, 2.)

Kooma, Inc. operates a restaurant located at 123 N. Church Street in West Chester, Pennsylvania and employs Tipped Employees.  (_Id._ ¶ 25.)  Kooma, Inc.'s corporate filings identify S. Kim as Kooma, Inc.'s President, Secretary and Treasurer, Moon as the Vice President, and J. Kim as the Secretary/Treasurer, Director and Stockholder.  (_Id._ ¶¶ 25, 32.)  Kooma, Inc.'s filing with the Pennsylvania Liquor Control Board identifies Kwun as Kooma, Inc.'s President, Director, and Stockholder.  (_Id._)  The individual defendants exercise control over the labor policies and practices of the "Kooma Entities," (_Id._ ¶¶ 29-32), and the corporate entities "share common labor policies and practices."  (_Id._ ¶ 33.)

Kooma Viet operated a restaurant located at 151 W. Gay Street in West Chester and employed Tipped Employees.  (_Id._ ¶ 26.)  Kooma Viet has since closed.  (_Id._ ¶ 2 n.2.)  Kooma

---

[1]     Section 216(b) of the FLSA authorizes suit against "any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Section 216(b) provides for an "opt-in" collective action scheme.  _Id._ ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); _Sperling v. Hoffman-La Roche, Inc._, 862 F.2d 439, 444 (3d Cir. 1988) ("Unlike Rule 23 class actions, the FLSA collective action requires the class members to signify their consent, commonly referred to as an 'opt-in' provision."), _aff'd_ 493 U.S. 165 (1989).  This statutory language "bars opt-out class actions to enforce the provisions of the FLSA."  _Knepper v. Rite Aid Corp._, 675 F.3d 249, 257 (3d Cir. 2012).  Thus the district courts engage in a two-tier collective action certification process that is separate and distinct from the certification process pursuant to Federal Rule of Civil Procedure 23.  _See Zavala v. Wal-Mart Stores Inc._, 691 F.3d 527 (3d Cir. 2012).

[2]     A plaintiff may file a putative collective action pursuant to § 216(b) along with a putative class action pursuant to Federal Rule of Civil Procedure 23 based on state-law claims that parallel the FLSA.  _Knepper_, 675 F.3d at 261-62.

Riverfront operates a restaurant employing Tipped Employees located at 400 Justison Street in Wilmington, Delaware.  (*Id.* ¶ 27.)  J. Kim is the manager of Kooma Riverfront.  (*Id.* ¶ 32.) Kooma II's registered address is 123 E. Gay Street in West Chester and it owns the liquor license for the restaurant at that location.  (*Id.* ¶ 28.)

Mackereth began working for "Kooma" on March 15, 2009.  During this time, she has worked as a Tipped Employee at the restaurants located at 151 W. Gay Street and 123 N. Church Street in West Chester, Pennsylvania.  (*Id.* ¶ 21.)  Prior to the summer of 2011, Mackereth worked full time and "there were multiple occasions where [she] worked in excess of forty hours per week."  (*Id.* ¶ 44.)  Since the summer of 2011, Mackereth typically works two shifts per week and averages approximately fourteen to sixteen hours per week.  (*Id.* ¶ 43.)  Mackereth is paid an hourly rate of $2.85, regardless of the amount of tips she receives.  (*Id.* ¶ 45.)  She has received paychecks from Kooma, Inc. and Kooma II.  (*Id.* ¶ 21.)

Young worked for "Kooma" from the summer of 2006 through September 2014.  (*Id.* ¶¶ 46, 122.)  He, like Mackereth, worked at 151 W. Gay Street and 123 N. Church Street and received paychecks from both Kooma, Inc. and Kooma II.  (*Id.* ¶ 22.)  Young typically worked two shifts per week and averaged thirteen hours per week.  (*Id.* ¶ 47.)  Young was paid a wage of $2.85 per hour worked, regardless of the amount of tips he received.  (*Id.* ¶ 48.)

Wetzel began working for "Kooma" in the summer of 2010.  (*Id.* ¶ 49.)  From the beginning of her employment until May 2013, she worked part-time and averaged twenty hours per week.  (*Id.* ¶ 50.)  Since then Wetzel works five to six days a week and averages approximately thirty-five hours per week.  (*Id.* ¶ 51.)  Wetzel has received paychecks from Kooma, Inc. and Kooma II and has worked at the restaurants located at 151 W. Gay Street and 123 N. Church Street.  (*Id.* ¶ 23.)

Throughout Plaintiffs' time with "Kooma," the Defendants allegedly claimed the tip credit permitted under the FLSA and PMWA and paid their Tipped Employees either an hourly wage of $2.85 or nothing at all.  (*Id.* ¶ 111.)  Plaintiffs "do not recall being notified by Defendants that they intended to take a 'tip credit,'" or how much the credit would be.  (*Id.* ¶ 74.) The Tipped Employees were not given any documents explaining the operation of the tip credit or their rights under the relevant wage laws.  (*Id.* ¶ 75.)

Though Tipped Employees did not always earn tips sufficient to amount to the minimum hourly wage, Plaintiffs were never paid more than $2.85 per hour.  (*Id.* ¶ 81.)  Specifically, Mackereth worked a full day as a bartender on July 4, 2013 and earned only $30 in tips.  Her wages were not adjusted to ensure that she earned the mandatory minimum hourly wage.  In another instance, Mackereth made only $20 in tips during a five hour shift, and, again, her wages were not adjusted.  (*Id.* ¶¶ 82-84.)

Defendants also forced their Tipped Employees to forfeit a portion of their tips to cover various expenses and to work without compensation.  Tipped Employees had to pay Defendants "anywhere from a few hundred to a few thousand dollars" to help Defendants satisfy a delinquent tax bill, and they were required to pool three percent of their tips to compensate the sushi chefs and the back of the house cooks.  (*Id.* ¶¶ 93, 96.)  Tipped Employees were obligated to clean the restaurants, which typically lasted several hours, without compensation.  (*Id.* ¶ 104.) Tipped Employees were also required to help Kooma, Inc. move locations in late August 2013 without compensation.  (*Id.* ¶ 105.)

Plaintiffs further allege that Defendants failed to pay Tipped Employees overtime for the hours they worked in excess of forty hours per week.  On "multiple occasions," Wetzel worked a double shift.  (*Id.* ¶ 52.)  Working a double shift requires the Tipped Employee to work a shift of

approximately 10.5 hours (on a week day) or 12.5 hours (on the weekend).  (*Id.* ¶ 52.)  During

the summer of 2013, Wetzel "was often working five (5) to six (6) doubles per week," which

amounted to approximately 52.5 to 67 hours per week.  (*Id.* ¶ 53.)  Wetzel never received any

overtime compensation for the time she worked in excess of forty hours per week and received

an hourly wage of $2.85, regardless of the tips she earned.[3]  (*Id.* ¶ 54.)  Defendants also allegedly

manipulated Tipped Employees' time entries in the timekeeping system to "minimize the amount

of hours worked."  (*Id.* ¶ 100.)  Mackereth typically worked the same shifts each week, but her

recorded hours varied widely from week to week.  (*Id.* ¶ 101.)  Similarly, if a Tipped Employee

was approaching forty hours for the week, the employee was instructed not to clock in until his

first table arrived and/or to clock out after the last table left for the evening.  (*Id.* ¶ 103.)  Thus

"Tipped Employees regularly worked hours in excess of 40 in a week"—some worked shifts that

exceeded forty hours and others exceeded forty hours through "off the clock work"—and were

not compensated for this time.  (*Id.* ¶ 113.)

On August 18, 2014, Plaintiffs filed this action against the Defendants.  (Compl., Doc.

No. 1.)  On September 9, 2014, Defendants instituted new rules and regulations for their Tipped

Employees.  (*Id*. ¶ 118.)  The new rules required, for the first time, all evening shifts to begin at

4:00 p.m and a late arrival became grounds for termination.  (*Id.* ¶ 120.)  Prior to the

implementation of these rules, Plaintiffs had always begun their evening shifts after 4 p.m.  (*Id.* ¶

121.)  Young was forced to resign from his position because he could not comply with the new

start time.  (*Id.* ¶ 122.)  The rules and regulations also altered the "closer" position.  As the

"closer," the most senior Tipped Employee remained to serve customers after the other servers

---

[3]    It is unclear whether Wetzel received an hourly wage of $2.85 or no wages at all.  Paragraph 23 of the
Amended Complaint alleges that Wetzel received paychecks from both Kooma, Inc. and Kooma II.  Paragraph 55
states that Wetzel received a paycheck of $2.85 per hour worked and "to the best of Wetzel's recollection, she did
not receive a paycheck from Defendants for any of the wages earned."  Based on these allegations, the Court
assumes that Wetzel was paid $2.85 per hour worked.

finished their shifts for the night.  (*Id.* ¶ 124.)  Plaintiffs "due to their seniority and long tenure" usually held the position of closer during their respective shifts.  (*Id.* ¶ 126.)  The new rules and regulations provided that management would determine which server would remain as "closer" for a given shift.  (*Id.* ¶ 125.)  This effectively eliminated the closer position and the opportunity to receive additional tips.  (*Id.* ¶ 123.)  Mackereth was informed by a co-worker that the Defendants specifically stated that (1) the new rules were designed to teach Plaintiffs a lesson and (2) the earlier shift start time was implemented because "it was the only legal way to get rid of" Mackereth and Young.  (*Id.* ¶¶ 128-29.)

In response to the new rules and regulations, Plaintiffs moved for a temporary restraining order and preliminary injunction on September 13, 2014.  (Doc. No. 4.)  Judge Brody[4] denied Plaintiffs' request and issued a temporary order permitting Defendants to enforce their new rules subject to certain exemptions for Plaintiffs.  (*See* Doc. No. 9.)  The preliminary injunction matter was settled and the parties stated their agreement on the record at a hearing before Judge Brody on October 8, 2014.  (Doc. No. 14.)  Defendants then moved to dismiss the complaint, and Plaintiffs responded by filing an amended complaint on November 20, 2014.

The amended complaint alleges that Defendants fail to pay the required minimum wage and overtime compensation in violation of the FLSA, PMWA and WPCL, that Defendants were unjustly enriched by their failure to comply with the PMWA and forcing Tipped Employees to work without compensation, and that Defendants violated the anti-retaliation provision of the FLSA by implementing the new rules and regulations.  The claims are brought on behalf of "employees who work or have worked restaurants [sic] operating under the trade name 'Kooma,' including 'Kooma,' 'Kooma Viet,' and 'Kooma Riverfront,' that is owned and operated and/or

---

[4]     This case was initially assigned to the Honorable Anita B. Brody.  The case was reassigned to this Court on February 6, 2015.  (*See* Order, Doc. No. 35.)

managed by" the Defendants.  (Am. Compl. ¶ 1.)  Defendants renewed their motion to dismiss

on December 4, 2014, and Plaintiffs responded on December 22, 2014.  (Doc. No. 33.)

Defendants replied on January 1, 2015.  (Doc. No. 34.)

## II.  *Legal Standard*

Defendants move to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.[5]  A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the

factual allegations in the complaint."  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

When considering a motion to dismiss pursuant to Rule 12(b)(6), courts "consider only the

complaint, exhibits attached to the complaint, matters of public record, and documents that form

the basis of the claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004), *abrogated in*

*part on other grounds, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  The court must

"accept all factual allegations as true" and "construe the complaint in the light most favorable to

the plaintiff."  *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Pinker v.*

*Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  A court need not, however, take as

---

[5]      Defendants also move to dismiss Plaintiffs' FLSA claims pursuant to Rule 12(b)(1), contending that the demonstration of an employee-employer relationship is necessary to establish constitutional and statutory standing. However, the existence of an employer-employee relationship is an element of an FLSA claim, and is thus subject to challenge via Rule 12(b)(6) or summary judgment motion—it is not a jurisdictional prerequisite.  *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142 (3d Cir. 2014) (vacating district court's dismissal pursuant to Rule 12(b)(6) because plaintiffs alleged, under multiple theories, that defendants were their employers); *In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 470-71 (3d Cir. 2012) (affirming district court's judgment pursuant to defendant's summary judgment motion because the plaintiff failed to establish an employer-employee relationship with the movant); *accord Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.3d 895, 897-98 (3d Cir. 1987) ("[A] court has jurisdiction over the dispute so long as the plaintiff alleges that defendant's actions violate the requisite federal law. . . . Once the plaintiff has met this threshold pleading requirement, however, the truth of the facts alleged in the complaint is a question on the merits, as is the legal question whether the facts alleged establish a violation.").  Accordingly, the Court, like numerous others in this Circuit, considers Defendants' arguments challenging the sufficiency of the alleged employer-employee relationship pursuant only to their 12(b)(6) motion.  *See, e.g.*, *Thompson*, 748 F.3d 142; *Lepkowski v. Telatron Mktg. Grp., Inc.*, 766 F. Supp. 2d 572 (W.D. Pa. 2011); *Naik v. 7-Eleven, Inc.*, No. 13-cv-4578, 2014 WL 3844792 (D.N.J. Aug. 5, 2014); *Kaskey v. Osmose Holdings, Inc.*, No. 13-cv-4825, 2014 WL 1096149 (E.D. Pa. Mar. 20, 2014); *Schneider v. IT Factor Prods.*, No. 13-cv-5970, 2013 WL 6476555 (E.D. Pa. Dec. 10, 2013); *Shakib v. Back Bay Rest. Grp., Inc.*, 10-cv-4564, 2011 WL 4594654 (D.N.J. Sept. 30, 2011); *Juan Su v. Guang Yang Li*, No. 10-cv-5268, 2011 WL 3329882 (D. N.J. Aug. 1, 2011).  *But see Li v. Renewable Energy Solutions, Inc.*, No. 11-cv-3589, 2012 WL 589567 (D.N.J. Feb. 22, 2012).

true "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp.*, 643 F.3d at 84 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 210-11 (citation omitted). "This does not impose a probability requirement at the pleadings stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 n.3).

### III.   *Discussion*

#### A.  *Fair Labor Standards Act Claims (Counts I & II)*

"Congress enacted the FLSA in 1938 with the goal of protecting all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (citations and internal quotation marks omitted). "The FLSA establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). The FLSA generally requires employers to pay an employee "who in any workweek is engaged in commerce" no less than the federal minimum wage, 29 U.S.C § 206(a), and to provide overtime compensation "at a rate not less than one and one-half times the regular rate" for each hour worked in excess of 40 hours a week. 29 U.S.C. § 207(a). Section 216(b) provides a

private right of action for violations of the FLSA, including a suit by one or more employees

filed on behalf of themselves and other similarly situated employees.  29 U.S.C. § 216(b).

Defendants move to dismiss Plaintiffs' FLSA claims on two grounds.  They contend that

Plaintiffs failed to plausibly allege an employer-employee relationship between Plaintiffs and

any defendant, and they challenge the sufficiency of the factual allegations underlying both the

minimum wage and overtime claims.

### i.  Employer-Employee Relationship

The "first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable

employer-employee relationship."  *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148

(3d Cir. 2014); *Davis v. Abington Mem'l Hosp.*, Nos. 09-cv-5520, 09-cv-5533, 09-cv-5548, 09-

cv-5549, 09-cv-5550, 09-cv-5551, 2012 WL 3206030, at *3 (E.D. Pa. Aug. 7, 2012) ("For a

defendant to be liable as an employer under the FLSA, the defendant must be an 'employer' as

defined under the Act, in that the defendant must be alleged to have an employer-employee

relationship with the plaintiff."), *aff'd on other grounds* 765 F.3d 236 (3d Cir. 2014).  The FLSA

defines an employer as "any person[6] acting directly or indirectly in the interest of an employer in

relation to an employee."  29 U.S.C. § 203(d).  An employee is "any individual employed by an

employer," *id.* § 203(e)(1), and employ means "to suffer or permit to work."  *Id.* § 203(g).

"When determining whether someone is an employer under the FLSA, 'the economic reality

rather than the technical concepts is to be the test of employment.'  Under this theory, the FLSA

defines employer 'expansively,' and with 'striking breadth.'  The Supreme Court has even gone

so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition

that has ever been included in any one act.'"  *Thompson*, 748 F.3d at 148 (quoting *In re*

---

[6]      Person includes "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).

*Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012)).  Defendants challenge the sufficiency of the allegations establishing an employment relationship with all defendants.

Plaintiffs sufficiently allege that Kooma, Inc., Kooma Viet, and Kooma II are their employers.  Plaintiffs assert that "Defendants have employed, and/or continue to employ Plaintiffs . . ."  (Am. Compl. ¶ 144.)  In support of this allegation Plaintiffs aver that Mackereth has been employed as a Tipped Employee since March 15, 2009, Young was employed as a Tipped Employee from August 2006 until September 2014, and Wetzel has been employed as a Tipped Employee since August 2010.  They all received paychecks from Kooma, Inc. and Kooma II, and they worked at the addresses that correspond with the locations of Kooma, Inc. and Kooma Viet.[7]  (*Id.* ¶¶ 21-23, 25, 26.)  These allegations satisfy Plaintiffs' pleading burden by plausibly showing that these entities are their direct employers.  *See Thompson*, 748 F.3d at 148; *see also Alvarez v. Millenium Tree Serv. & Landscaping Design, Inc.*, No. 12-cv-7182, 2013 WL 5536193, at *2 (D.N.J. Oct. 7, 2013) ("Millenium is an 'employer' because it is the company Alvarez worked for."); *Davis*, 2012 WL 3206030, at *4 ("The Third Amended Complaint alleges that Plaintiffs . . . worked as RNs at Defendant Mercy Philadelphia Hospital, and that Plaintiffs' direct supervisors at Mercy Philadelphia Hospital supervised their work and were the individuals to whom they reported each day.  It further alleges that Defendant Mercy Catholic Medical Center is the entity from whom Plaintiffs receive their paychecks . . . . These allegations are sufficient to state a claim that Defendants . . . Mercy Catholic Medical Center and Mercy

---

[7]      Though Plaintiffs state that Kooma, Inc. moved from 151 W. Gay Street to its current location at 123 N. Church Street in late August 2013, (Am. Compl. ¶ 105), the Court draws all inferences in favor of Plaintiffs and concludes that Plaintiffs worked for both Kooma, Inc. and Kooma Viet despite Kooma, Inc.'s presence at both locations during Plaintiffs' employment.

Philadelphia Hospital were Plaintiffs' employers."). The motion to dismiss the FLSA claims against Kooma, Inc., Kooma Viet, and Kooma, II is denied.

The amended complaint, however, is devoid of similar allegations pertaining to Kooma Riverfront. Plaintiffs instead appear to contend that Kooma Riverfront, as part of the "Kooma Entities," is a joint, rather than direct, employer of Plaintiffs. A "single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA]." *In re Enterprise*, 683 F.3d at 467 (quoting 29 C.F.R. § 791.2(a)). Courts must apply the multi-factor *Enterprise* test to determine whether a defendant is a "joint employer" under the FLSA. *Id.* at 468. The enumerated factors include: (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance or taxes. *Id.* at 469. This list, however "is not exhaustive" and "a determination as to whether a defendant is a joint employer 'must be based on a consideration of the total employment situation and the economic realities of the work relationship.'" *Id.*

The amended complaint contains no factual allegations by which the Court can conclude that Kooma Riverfront is Plaintiffs' joint employer. Plaintiffs allege only that the "Defendants are a single and joint employer with a high degree of interrelated and unified operations, sharing common officers with a common address. Further, each of these Defendants share [sic] the common labor policies and practices complained of herein which [sic]." (Am. Compl. ¶ 33.) The only alleged connection between Kooma Riverfront and the other named defendants is the

assertion that J. Kim "is also the manager of Kooma Riverfront." (*Id.* ¶ 32.)  Common ownership or membership in a common enterprise is insufficient to show that an entity is a joint employer.  *Davis*, 2012 WL 3206030, at *5 ("These Defendants cannot be held liable merely because they have common ownership or are otherwise part of a common enterprise wherein some entities are employers of the named Plaintiffs.").  The factual averments are insufficient to nudge Plaintiffs' claim that Kooma Riverfront is their joint employer from conceivable to plausible.  *See Twombly*, 550 U.S. at 570 ("Because the plaintiffs have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  The FLSA claims against Kooma Riverfront are dismissed.

 As to the individual defendants, "[t]he FLSA imposes individual liability on 'any person acting directly or indirectly in the interest of an employer in relation to an employee." *Thompson*, 748 F.3d at 153 (quoting 29 U.S.C. § 203(d)).  "A company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA." *Id.*  Liability exists when the individual exercises "supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation while acting in the employer's interest." *Id.* (quoting *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)).  An individual has supervisory authority "when the supervisor independently exercises control over the work situation." *Id.*  Again, the "focus is on 'the totality of the circumstances rather than on the technical concepts of the employment relationship.'" *Id.* at 154 (quoting *Haybarger*, 667 F.3d at 418).

The amended complaint alleges only that Defendants S. Kim, Moon, Kwun and J. Kim are corporate officers who "exercise sufficient control over the labor policies and practices complained of herein to be considered the employers of Plaintiffs" within the meaning of the

FLSA.  (Am. Compl. ¶¶ 29-32.)  The Court cannot consider this legal conclusion.  What remains

is an allegation that the individual defendants hold various positions as corporate officers of

Kooma, Inc. and that J. Kim is the manager of Kooma Riverfront.  Plaintiffs must allege

something more than the mere positions of the individual defendants to show that they are

Plaintiffs' employers.  *See Thompson*, 748 F.3d at 154 (vacating district court's dismissal of

FLSA claim against corporate officers in their individual capacities because plaintiffs alleged

"the scope of the individual defendants' workplace authority and of specific statements by

Chapman as to overtime pay").  The FLSA claims against the individual defendants are

dismissed.

### ii.  *Factual Allegations Underlying the FLSA Claims*

The Defendants challenge the sufficiency of Plaintiffs' factual averments supporting both

their minimum wage claim and their overtime claim.  The FLSA requires employers to pay their

employees a minimum wage of $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  Employers may pay

"tipped employees" less than the required minimum wage if the employees' wages and tips,

added together, meet or exceed the minimum wage.  29 U.S.C. § 203(m).  "Known as a 'tip

credit,' this exception allows for employers to pay 'tipped employees' an hourly rate of $2.13

which is then supplemented by the employee's retained tips to meet the required federal

minimum wage."  *Ford v. Lehigh Valley Rest. Grp., Inc.*, No. 14-cv-227, 2014 WL 3385128, at

*2 (M.D. Pa. July 9, 2014) (citing 29 U.S.C. § 203(m)).  "An employer can utilize the tip credit

only when: 1) an employer informs the employee that a tip credit is being utilized and the

amount of such a credit; 2) the employee makes tips equaling the tip credit amount and 3) the

employee retains all tips collected."  *Id.* (citing 29 C.F.R. § 531.59); *see also Reich v. Chez

Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) ("If the employer cannot show that it has informed

employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum wage.").

The core of Plaintiffs' minimum wage claim is that Defendants failed to satisfy the requirements necessary to claim the tip credit, and thus they were not lawfully permitted to pay their Tipped Employees less than the minimum wage.  Plaintiffs contend that they are owed the difference between the mandated minimum wage ($7.25) and the pay they received ($2.85)[8] for all hours worked.  Plaintiffs identified the number of shifts and the hours they typically worked per week and stated that they were always paid $2.85 per hour.  The Tipped Employees were never notified that Defendants intended to claim the tip credit and they were never given any information about the tip credit.  The Defendants never adjusted the Tipped Employees' hourly wages when their combined tips and wages did not equal the minimum hourly wage, and the Tipped Employees' hourly wages were further decreased when they were required to work without compensation or the opportunity to earn tips.  Finally, the Tipped Employees were forced to forfeit some of their tips to pay a tax bill and to compensate the restaurants' cooks. Plaintiffs' allegations that they were entitled to and did not receive the mandated hourly minimum wage for all hours worked are more than plausible.  *See Iqbal*, 556 U.S. at 679 (holding that a "plausible" claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Plaintiffs have stated an FLSA minimum wage claim against Kooma, Inc., Kooma Viet, and Kooma II.

Generally, an employer must pay its employees one and one-half times the employee's regular wage for hours worked in excess of forty hours per week.  29 U.S.C. § 207.  "[T]o recover overtime compensation under the FLSA, an employee must prove that he worked

---

[8]     Pennsylvania permits a smaller tip credit which requires tipped employees to be paid an hourly wage of at least $2.83.  34 Pa. Code § 231.101.

overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (citation omitted). The United States Third Circuit Court of Appeals recently addressed "the level of detail necessary to plead an FLSA overtime claim." *Id.* A plausible overtime claim requires plaintiffs to allege that they "in fact worked extra hours *during* a typical (that is, a forty-hour) week." *Id.* Thus, a plaintiff may survive a motion to dismiss by claiming "that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks." *Id.* at 243. Here, Plaintiffs allege that Wetzel typically worked 35 hours a week, but during the summer of 2013, Wetzel often worked 52.5 to 67 hours per week. Wetzel and other Tipped Employees were paid $2.85 regardless of the number of hours they worked. Plaintiffs' allegations again satisfy their pleading burden. *Davis*, 765 F.3d at 243. Plaintiffs have stated an FLSA overtime claim against Kooma, Inc., Kooma Viet, and Kooma II.

### B. Pennsylvania Minimum Wage Act Claims (Counts III & IV)

The PMWA has a similarly broad definition of the term "employer." It states that an employer "includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 Pa. Cons. Stat. § 333.103(g). Pennsylvania courts look to federal case law and the tests employed by the federal courts to determine if a defendant is an employer under the PMWA. *Dep't of Labor & Industry v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd* 859 A.2d 1253 (Pa. 2004); *see also Itterly v. Family Dollar Stores, Inc.*, -- F. App'x --, No. 14-cv-1274, 2015 WL 1569697 at *2 n.4 (3d Cir. Apr. 9, 2015) ("Pennsylvania courts have looked to federal law regarding the FLSA for guidance in applying the PMWA."); *accord Scholly v.*

*JMK Plastering, Inc.*, No. 07-cv-4998, 2008 WL 2579729, at *4 (E.D. Pa. June 25, 2008) ("It would be incongruous to construe this practically identical language to have a meaning different than that of the FLSA.").  Plaintiffs have plausibly alleged that Kooma, Inc., Kooma Viet, and Kooma II are their employers under the FLSA and have likewise satisfied their burden under the PMWA.  The PMWA claims are dismissed only as to Kooma Riverfront and the individual defendants.

### C.  Unjust Enrichment Claim (Count VI)

Unjust enrichment occurs when "one party has been unjustly enriched at the expense of another."  *Braun v. Wal-Mart Stores*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011), *aff'd on other grounds*, 106 A.2d 565 (Pa. 2014).  "The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  *Id.* (citing *Stoeckinger v. Presidential Fin. Corp. of Del. Valley*, 948 A.2d 828, 833 (Pa. Super. Ct. 2008); *see also Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000).  "A claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that . . . would be unconscionable for her to retain."  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (quoting *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008)).

Defendants move to dismiss Plaintiffs' unjust enrichment claim because "Plaintiffs again failed to identify which Defendant employed each Plaintiff or which Defendant allegedly was engaged in a quasi-contractual relationship with and, later, was unjustly enriched by each Plaintiffs' conduct."  (Mot. Dismiss 20-21.)  As discussed above, Plaintiffs adequately pled an employer-employee relationship with Kooma Inc., Kooma Viet, and Kooma II.  This relationship places Defendants on notice as to "which Defendant[s] allegedly [were] engaged in a quasi-

contractual relationship with and, later, [were] unjustly enriched."  Plaintiffs have likewise

sufficiently pled each element of the claim.  The benefits conferred are Plaintiffs' free "off-the-

clock" labor and Defendants' collection of portions of Plaintiffs' tips to cover Defendants'

business expenses.  Taking Plaintiffs' allegations as true, it would be unjust for Defendants to

unlawfully receive the benefits of Plaintiffs' labor while failing to pay Plaintiffs for that time.

Similarly, it would be unjust for Defendants to unlawfully take portions of Plaintiffs' tips to pay

their business expenses.  *See, e.g.*, *Thompson v. U.S. Airways, Inc.*, 717 F. Supp. 2d 468, 481

(E.D. Pa. 2010) ("If, in fact, the Defendants have failed to pay Plaintiffs for time worked, or have

been paying Plaintiffs a sub-minimum wage while simultaneously curtailing skycaps' ability to

receive tips, then it would indeed be unconscionable for the Defendants to retain the benefit that

they have accrued at the skycaps' expense.").  Plaintiffs state a claim of unjust enrichment

against Kooma, Inc., Kooma Viet, and Kooma II.

### D.  Pennsylvania's Wage Payment and Collection Law Claim (Count V)

Defendants move to dismiss Plaintiffs' WPCL claim asserting that an employer is liable

under the WPCL only if there is a contractual relationship between the employer and the

employee.  Plaintiffs counter that "proof of a 'contract' is not necessary to plead a claim under

the WPCL" because "federal and state courts have held that a right to wages that may be asserted

under the PMWA may also be litigated under the WPCL even in the absence of a contract."

(Pls.' Opp'n Mot. Dismiss 17.)

The Pennsylvania Supreme Court has stated that "[t]he Wage Payment and Collection

Law provides employees a statutory remedy to recover wages and other benefits that are

*contractually due to them*."  *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997)

(emphasis added).  The United States Court of Appeals for the Third Circuit has likewise stated

that "the WPCL does not create a right to compensation . . . . rather, it provides a statutory

remedy when the employer breaches a *contractual obligation to pay earned wages*." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (emphasis added).  Absent a formal employment contract or collective bargaining agreement, the plaintiff must establish the formation of an implied oral contract to pursue a WPCL claim.  *Id.*

The parties' conflicting recitations of the law reflect a recent tension in the Pennsylvania Superior Court's decisions.  In 2009, when considering a claim by employees of a chicken processing plant to collect unpaid wages for time spent donning, doffing, and sanitizing their protective gear, the Superior Court noted that the "WPCL is a statutory vehicle that the legislature has provided for employees to recover unpaid wages that are due to them" and held that because the plaintiffs alleged that they were owed wages under the PMWA, "the employees could also enforce their right to those wages under the WPCL." *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. Ct. 2009).

More recently, the Superior Court observed, when considering a claim for breach of an agreement to pay wages for rest breaks and off-the-clock work by Wal-Mart employees, that "absent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and the employer." *Braun*, 24 A.3d at 954 (citing *De Asencio*, 342 F.3d at 309.  Thus, "[t]o present a wage-payment claim, the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation." *Id.* (quoting *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005)); *see also Baron v. Quad Three Grp., Inc.*, No. 221 MDA 2012, 2013 WL 3822134, at *4 (Pa. Super. Ct. 2013) (reiterating that "the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation.").

Based on the Superior Court's most recent declaration, which reflects the Third Circuit's reading, a plaintiff must allege a contractual right—either written or oral— to the claimed wages to state a claim pursuant to the WPCL. *See Bosler v. Bio-Medical Applications of Pa.*, No. 14-cv-1530, 2015 WL 479914, at *2 (E.D. Pa. Feb. 4, 2015); *Drummond v. Herr Foods Inc.*, No. 13-cv-5991, 2014 WL 80729, at *3 (E.D. Pa. Jan. 9, 2014); *Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-cv-3154, 2012 WL 645905, at *4-5 (E.D. Pa. Feb. 29, 2012).  Plaintiffs do not allege the existence of a contractual right, either express or implied, to recover the wages they seek pursuant to the WPCL.  This claim is dismissed.

### E.  FLSA Retaliation Claim (Count VII)

The FLSA includes an anti-retaliation provision that makes it unlawful for any person

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;

29 U.S.C. § 215(a)(3).  "The appropriate framework for analyzing claims of unlawful retaliation under the FLSA is the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002).

Under that framework, the employee must first establish the three elements of a *prima facie* case: "(1) the employee engaged in protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Parry v. New Dominion Const., Inc.*, No. 14-cv-1115, 2015 WL 540155, at *6 (W.D. Pa. Feb. 10, 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) and *Wildi v.*

*Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640, 664 (W.D. Pa. 2009)); *Scholly*, 2008 WL 2579729, at *3 (citations omitted).  At this early stage, however, Plaintiffs need only plead facts sufficient to raise the inference that they can establish the elements of a *prima facie* case of retaliation.  *See, e.g.*, *Mikulski v. Bucks Cnty. Cmty. Coll.*, No. 11-cv-557, 2011 WL 1584081, at *5 (E.D. Pa. Apr. 27, 2011) ("At the motion to dismiss stage, Plaintiff need not prove her prima facie case but rather must state a facially plausible claim.").

Defendants contend that Plaintiffs failed to allege that they suffered an adverse action. An action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (citations omitted); *see also Jones v. Judge Tech. Servs., Inc.*, No. 11-cv-6910, 2013 WL 5777159, *7 (E.D. Pa. Oct. 25, 2013) (applying standard outlined in *Burlington N. & Santa Fe Ry. Co.* to FLSA retaliation claim).  The challenged conduct must be examined "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 71).  Though "petty slights, minor annoyances, and simple lack of good manners" are generally insufficient, "context matters" and "an act that would be immaterial in some situations will be material in others."  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68-69.

Plaintiffs identify two actions taken by Defendants in apparent retaliation for the filing of their initial complaint: (1) requiring, for the first time, all evening shifts to begin at 4 p.m. and (2) replacing the "closer" position, which was filled by the most senior server, with a rule that management determines who remains as the last server of the night.  These changes were made "mere weeks" after Plaintiffs filed their initial complaint.  (Am. Compl. ¶ 118.)  The closer

position was allegedly eliminated "to teach the Plaintiffs a lesson" and the earlier shift time was allegedly implemented because "'it was the only legal way to get rid of' Plaintiffs Mackereth and Young." (*Id.* ¶ 128-29.)

Plaintiffs allege that Young was forced to resign as a result of the schedule change. A reasonable employee would find this change, given the context in which it was made, materially adverse. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69 (observing that, in the right context, a schedule change may amount to retaliatory conduct). Moreover, Plaintiffs allege that, based on their tenure, they "usually held the position of closer." (Am. Compl. ¶ 126.) The effective elimination of this position—and the resulting decreased opportunity for tips—again raises the inference that a reasonable employee would have found the action materially adverse. *Accord Reed v. Cracker Barrel Old Country Store, Inc.*, 133 F. Supp. 2d 1055, 1071 (M.D. Tenn. 2000) ("In a profession where wage is determined almost solely by tips, the consistent decision to place the plaintiff in a section with fewer customers than anywhere else in the restaurant amounted to a decreased wage" and thus "the plaintiff has presented sufficient evidence to show that she suffered an adverse employment action"). Plaintiffs sufficiently allege that they suffered materially adverse actions and they have, as employees of Kooma, Inc., Kooma Viet, and Kooma II, stated a retaliation claim against these entities.

## IV.   *Leave to Amend*

Plaintiffs request, in a footnote appended to their response in opposition to Defendants' motion to dismiss, "leave to amend their pleadings to address any such deficiencies" identified by the Court. (Pls.' Opp'n Mot. Dismiss 3 n.4.)

Plaintiffs were entitled to amend their amended complaint once "as a matter of course" within twenty-one days after service of a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(b). Plaintiffs did not exercise this right in response to Defendants' motion to dismiss their amended

complaint and now may amend only with leave of the Court. Though the Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), leave need not be given if the party fails to properly request it. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) ("[I]n ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint.").

Plaintiffs' request to amend their complaint is improper. Plaintiffs' request does not describe the "deficiencies" they seek to address. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought— does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013). Similarly, Plaintiffs do not attach a draft amended complaint to their response to Defendants' motion. Failure to do so is "fatal to a request for leave to amend." *Id.* (quoting *Fletcher-Harlee Corp.*, 482 F.3d at 252). Because Plaintiffs have not properly moved to amend their complaint, the Court "[does] not need to worry about amendment" at this time. *Id.* Plaintiffs' footnote request to further amend their complaint is denied.

### *Conclusion*

Viewing the facts in the light most favorable to Plaintiffs, the amended complaint sufficiently alleges that Kooma, Inc., Kooma Viet, and Kooma II are their employers. Plaintiffs have thus stated claims pursuant to the FLSA and PMWA as well as a common law unjust enrichment claim against these entities.

Plaintiffs have not alleged facts demonstrating that Kooma Riverfront or any of the individual defendants are their employers. The claims alleged against these defendants are

dismissed.  Likewise, Plaintiffs' failure to allege the existence of a contractual right to the wages they seek is fatal to their WPCL claim.  Thus, Count V is dismissed in its entirety and Counts I-IV, VI, and VII are dismissed as to Kooma Riverfront and the individual defendants.

An appropriate order follows.


<u>/s/ Gerald J. Pappert</u>
GERALD J. PAPPERT, J.